## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case Number: 25-cr-57-TNM** |
| **v.** | : | |
| | : | |
| | : | |
| **STEVENSON ALLEN,** | : | **Initial Appearance:  March 7, 2025** |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its request that defendant Stevenson Allen be detained pending trial of this matter pursuant to 18 U.S.C. §§ 3142(f)(1)(A).  Mr. Allen is charged in a three-count indictment with Distribution and Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), both of which are defined as "crimes of violence" pursuant to 18 U.S.C. § 3156(a)(4)(C).  He is also charged with Possession of Child Pornography, in violation of 18 U.S.C. 2252(a)(4)(B).  Further, there is a rebuttable presumption of detention here, where Mr. Allen is charged with offenses involving minor victims pursuant to 18 U.S.C. § 3142(e)(3)(E).  There is no condition or combination of conditions that will reasonably assure the safety of children in the community – particularly children online – if Mr. Allen is released.  As detailed below, an analysis of the factors set forth in 18 U.S.C. § 3142 leads to the conclusion that detention is the only way to protect children and to ensure the defendant's future appearance.

## FACTUAL BACKGROUND

Between December of 2023 and August of 2024, the defendant, Stevenson Allen, used the application Telegram to repeatedly distribute, solicit, and receive numerous images of young children being sexually abused, including images depicting the sexual abuse of prepubescent children and toddlers.  Allen did so by eagerly and excitedly engaging in approximately 17 chat conversations with other users – some of those conversations spanning months – in which the parties would exchange child sexual abuse materials (CSAM) for the apparent purpose of satisfying their own sexual arousal.

Defendant Allen came to the attention of law enforcement on July 17, 2024, as part of an undercover operation in which an FBI task force officer posed as a father with a sexual interest in children and who was also sexually abusing his minor daughter.  The undercover officer (UC), who was part of the Metropolitan Police Department-Federal Bureau of Investigation ("MPD-FBI") Child Exploitation Human Trafficking Task Force (CEHTTF), was located in Washington, D.C. at the time of the operation.  As part of his undercover role, the UC entered a social media platform, hereinafter "Platform A," that is known to the UC as a place where people meet to discuss various sexual interests, including an interest in child sexual abuse material (CSAM).

On July 17, 2024, at approximately 2:49 p.m., the UC received a private message on Platform A from an individual using the screen name, "prettyboi" who expressed a sexual interest in the UC's purported daughter and encouraged the UC to sexually abuse his minor daughter.   The "prettyboi" account is associated with the email address "stevensonallend@gmail.com." Approximately 18 minutes later, at 3:07 p.m., the chat conversation transitioned to the platform Telegram.  On Telegram, an individual using the screen name @xxxx, later identified as Stevenson

2

Allen continued to communicate with the UC. Their chat conversation includes the following

excerpts:

**UC:** lol
**Allen:** glad I met u tho
**UC:** Me too
**Allen:** nothing better than talking to a person that actually does it
**UC:** :)
**UC:** I am lucky
**UC:** She has a cute lil bubble butt, smooth skin and soft lil titties
**Allen:** so do you blind fold her or do she just know no to tell anybody
**UC:** She knows not to tell
**Allen:** yeah cause if I had a brother id definitely be on that
**Allen:** she must loves it then
**UC:** For sure!
**UC:** Yes she seemed bored at first but now seems to enjoy it
**Allen:** how do you eat her pussy
**UC:** A lot of different ways. Her on all fours, her on stomach, her on back legs spread
**Allen:** fuck you don't make videos?
**UC:** I only took a live FaceTime vid with another dad who played with his 4 yo while she slept. He played with her and I played with mine while we watched each other
**Allen:** if i was here id go in your room asking for it night time
**UC:** Take a few pics here and there
**UC:** U have videos
**Allen:** we can trade
**Allen:** i got videos of others
**UC:** Cool
**UC:** *Sent image [image does not depict a real child, nor does it depict child sexual abuse material]*
**UC:** Me and here panties when she is not here lol
**UC:** also shows I'm cool and safe
**Allen:** *Sent video depicting an adult male placing his penis in the mouth of a prepubescent female*
**Allen:** *Sent video of an adult male placing his penis in the mouth of what appears to be a sleeping prepubescent female. The male ejaculates into the child's mouth.*
**UC:** Mmmmm so fucking hot
**UC:** *Sent image [image does not depict a real child, nor does it depict child sexual abuse material]*
**Allen:** Shii
**Allen:** *Sent video depicting an adult male masturbating over a clothed female toddler as she is playing on an electronic device.*
**UC:** Mmmmmm
**UC:** Fuck so fucking hot
**UC:** We should hook up some time and perv together

**UC:**  *Sent image [image does not depict a real child, nor does it depict child sexual abuse material]*
**UC:**  Me in the middle of the night :)
**Allen:**  ik you love rubbing on her pussy
**Allen:**  you make her sleep in your bed
**UC:**  She has yes
**UC:**  Or I'll go in her room
**Allen:**  sexy
**Allen:**  I wanna see her pussy
**Allen:**  but you needa record more
**UC:**  Yeah I do for sure
**UC:**  I can do that on FaceTime [*provides phone number*]
**UC:**  Live
**UC:**  I trust u now lol

The chats then moved to a text-based conversation, with Allen texting the UC using the phone number 202-XXX-5825.  Initial subpoena returns for the phone number 202-XXX-5825 came back to a subscriber later identified as Allen's mother, with a service address in Northwest Washington D.C.  During those text-based chats, which date between July 17, 2024, and August 5, 2024, Allen provided his name as "Steve," and continued to ask the UC to provide images of him sexually abusing his daughter.  For example, an excerpt from July 17, 2024, includes the following exchange:

**UC:**  Nice to meet you man
**Allen:**  nice meeting you too
**UC:**  Which vid is your fav
**Allen:**  honesty I like fucking videos but I need see more of that
**UC:**  The sleeping one with cum was so hot
**UC:**  Yes!
**Allen**:  yeah that one was sexy ad
**Allen:**  would love to see you recreate that video
**UC:**  I can for sure when I have her again
**Allen:**  have she tasted nut before
**UC:**  She had but not used to it
**UC:**  Has
**Allen:**  you should make her drinks with your nut inside she wouldn't bend know it
**Allen:**  sounds hot asf
**Allen:**  like smoothies or in juice

On September 12, 2024, law enforcement executed a search warrant at Allen's residence in Northwest, Washington D.C. On that date, Allen participated in a voluntary interview with law enforcement in which he provided his phone number as 202-XXX-5825, the same phone number used to communicate with the UC between July and August of 2024. Law enforcement also encountered Allen's mother living at the address, the same individual listed as the subscriber for that phone number. During Allen's interview he admitted to using Telegram to send and receive child pornography. However, he claimed that he only did so in order to "scam" people and to make money. According to Allen, he planned to send a small number of child pornography images to other users to entice them to give him money for more, but then claimed that he planned to refuse to send any more child pornography after receiving payment. Allen also admitted that he never actually received any money for this purported scam.

During the search, law enforcement recovered multiple devices from Allen's home, most significantly being Item 1B8, an iPhone recovered from Allen's bedroom. That phone was forensically extracted, and the Preliminary Device Report ties the device to Allen, including with the phone number of 202-XXX-5825, an Apple ID of stevensonallen36@gmail.com, a device name of "Stevenson's iPhone," and sync data connected to "Stevenson's MacBook Pro." Additionally, Item 1B8 had the application Telegram installed on the phone, with an account name of "Xxxx," the same account name that communicated with the undercover officer in July of 2024.

Law enforcement reviewed the forensic extraction of the Telegram application from Item 1B8 and identified 17 different chat strings involving Allen, using the account name "Xxxx," in which Allen either distributed child pornography, received child pornography, or both, between December 2023 and August 2024. Law enforcement also recovered portions of the Telegram chats between Allen and the UC. Within these 17 chat strings, law enforcement did not find any

evidence that Allen was attempting to "scam" other users. Instead, the chats strongly suggest that Allen was eagerly sending and receiving child pornography for his own sexual gratification and for the sexual gratification of other users.

While each of the 17 chat strings is distinct and involves a different user communicating with Allen, they all are overtly sexual with an emphasis on exchanging a variety of explicit images, including CSAM, child erotica, adult pornography, and bestiality. For example, in a Telegram exchange that spans the dates of January 5, 2024, through July 16, 2024, the following exchange took place:

> **User 1834486605:** Yo
> **User 1834486605:** bro wsg
> **Allen:** Wsp
> **User 1834486605:** u got girls playing with their pussy?
> **User 1834486605:** I'm tryna trade
> **User 1834486605:** I got boys too

The two users then exchange numerous types of explicit images back and forth, four of which appear to be CSAM distributed by Allen.

In a second Telegram chat string found in Allen's phone, which spanned the dates of June 24, 2024, through August 23, 2024, the following exchange took place:

> **Allen:** Yo
> **User 18561832229:** Hey wats up
> Allen: You trade
> **User 18561832229:** I do
> **Allen:** What you got
> **User 18561832229:** Black cp
> **User 18561832229:** U
> **Allen:** Same
> **User 18561832229:** S2r
> **Allen:** Wyd
> **User 18561832229:** Waiting on your vids

The two users then exchange multiple images, two of which appear to be CSAM distributed by Allen.

As a third example, in a Telegram chat string that spanned the dates of March 10, 2024, and May 31, 2024, the following exchange occurred:

> **Allen:** yo nl gc trade?
> **User 6719646524:** No not no groups but I trade blacc kids
> **Allen:** Same
> **User 6719646524:** Girls or boys

As with the other Telegram chat strings, the two users then exchange numerous explicit images, some of which appear to be CSAM. Based on a review of the various images, it appears that Allen distributed approximately three CSAM images and received approximately three CSAM images from this user in return. The remaining Telegram chat strings are similar in tone, with Allen either distributing or receiving CSAM between the months of December 2023 through August 2024.

On February 27, 2025, Allen was charged in a three-count indictment with one count of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), one count of Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), and one count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). His initial appearance is expected to be held on March 7, 2025, and the United States will be requesting that a detention hearing be scheduled within three business days pursuant to 18 U.S.C. § 3142(f)(2)(B).

## APPLICABLE LEGAL STANDARD

The defendant is charged with Distribution of Child Pornography and Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2). Both charges are defined as crimes of violence because they are offenses under Chapter 110 of the United States Code. *See* 18 U.S.C. § 3156(a)(4)(C). Further, both charges give rise to a rebuttable presumption of detention where Mr. Allen is charged with offenses involving minor victims pursuant to 18 U.S.C. § 3142(e)(3)(E), where it is to be *presumed* that no combination of conditions will protect the community or assure the defendant's return. § 3142(e)(3)(E). This presumption "operate[s] at a minimum to impose a

burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"); *see also United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008). Even if the defendant does not pose a flight risk, danger to the community by itself is a sufficient reason to order pretrial detention. *United States v. Salerno*, 481 U.S. 739, 755 (1987).

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased. Instead, it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010)

("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

## ANALYSIS

Defendant Allen poses a danger to children in the community – most significantly children who are being sexually abused and are suffering as those abuse images circulate online – and there is no combination of conditions that will protect children from Mr. Allen.  The United States submits that that the defendant cannot rebut the presumption that he shall remain detained, as there is no condition or combination of conditions that will reasonably assure the safety of children in the community and ensure the defendant's future appearance in court.

### A.    Nature and Circumstances of the Charged Offense

For approximately eight months, between December 2023 through August 2024, defendant Allen eagerly and repeatedly distributed and received child pornography for no discernable purpose other than his own sexual gratification.  He did so with 17 different users on Telegram, and again with an undercover officer in July of 2024.  This was not a one-time lapse in judgement.  Rather, this was a sustained course of conduct that went on for months.

In addition, Allen's chats with the UC in July of 2024 suggest something even more sinister than the online exchange of child sexual abuse images:  those chats suggest that Allen was actively encouraging the sexual abuse of the undercover officer's purported child.  During the chats between Allen and the UC, Allen had every reason to believe that the UC was sexually abusing his minor daughter.  Rather than express any concern for this child, Allen enthusiastically encouraged the abuse and asked for recordings of the abuse saying:

> **Allen:**  ik you love rubbing on her pussy
> **Allen:**  you make her sleep in your bed
> **UC:**  She has yes
> **UC:**  Or I'll go in her room

> **Allen:**  sexy
> **Allen:**  I wanna see her pussy
> **Allen:**  but you needa record more

Equally disturbing, Allen made the degrading suggestion that the UC should make the child drink his semen, saying:

> **Allen:**  would love to see you recreate that video
> **UC:**  I can for sure when I have her again
> **Allen:**  have she tasted nut before
> **UC:**  She had but not used to it
> **UC:**  Has
> **Allen:**  you should make her drinks with your nut inside she wouldn't bend know it
> **Allen:**  sounds hot asf
> **Allen:**  like smoothies or in juice

While Allen did not attempt to abuse the child himself, his active encouragement of the UC suggests that his sexual interest in children is not limited to only exchanging images online and confirms that he is a danger to children both online and in the physical world.

Further, when confronted by law enforcement with evidence that he had distributed child pornography, Allen claimed that he only did so to "scam" other users. While Allen is entitled to his own explanation, there is no evidence in his phone supporting this claim. In fact, in a review of all 17 Telegram chat strings, there is no evidence that Allen ever requested money from other users for CSAM, or that he withheld CSAM in an attempt to get money from others. Instead, the chats strings uniformly depict Allen as someone who wanted to trade explicit images with other users for his own sexual gratification.

The defendant's alleged conduct strongly suggests that that he poses a danger both to children in the physical world as well as to unknown children who are suffering the aftermath of having images of their sexual abuse distributed online. On a broad level, children depicted in sexually explicit images and videos are victimized at the time the images were created, and they

are re-victimized each time an individual, like the defendant, views the images for their own sexual gratification. As explained by the Sixth Circuit in a child pornography case:

> ...we have numerous victims in a case like this, not one victim. Every image of a child, every image of a non-adult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of…children who are forced into these roles.

> ...every image has a child who has been exploited and abused, and that is the concern I have. It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

*See United States v. Miller*, 665 F.3d 114, 121-122 (6th Cir. 2011)(quoting the district court) (rejecting an attack on the child pornography sentencing guidelines and highlighting the grave harm caused to the victims depicted in child pornography images and the evidence that traffickers and possessors of child pornography are the impetus for the creation of more sexual abuse of minors).

Indeed, Congress has recognized the serious nature of the offenses that this defendant is charged with, and the long-term damage that these crimes can cause, by specifying that these crimes carry a rebuttable presumption of detention. § 3142(e)(3)(E). The defendant is alleged to have distributed child pornography to numerous individuals, including to an undercover officer who the defendant had every reason to believe was sexually abusing his own daughter. The defendant's actions demonstrate that he is a danger to children both online and in the physical world and there is no combination of conditions that will protect children both online and in the physical world from the defendant's predatory conduct and this first factor weighs heavily in favor of detention.

**B. The Weight of the Evidence Against the Defendant**

The weight of the evidence against defendant Allen is very strong.  Much of the evidence in this case was recovered from Item 1B8, an iPhone found in Allen's bedroom during the residential search.  Allen admitted that he used the phone number of 202-XXX-5825, which is the phone number associated with Item 1B8, despite Allen's mother being the subscriber for that phone number.  Further, the Preliminary Device Report from that phone shows other indicia of ownership by Allen, including the Apple ID of stevensonallen36@gmail.com, a device name of "Stevenson's iPhone," and sync data connected to "Stevenson's MacBook Pro."  Significantly, that same phone had the application Telegram installed, with an account name of "Xxxx," the same account name that communicated with the UC.  It was that same username, "Xxxx," that communicated with all 17 other Telegram users between December 2023 and August 2024.  Finally, Allen ultimately admitted to using Telegram to send and receive child pornography.  Although he claims to have done so only to "scam" others, his explanation does not provide a defense.  The distribution and receipt of child pornography is unlawful, irrespective of the reason for doing so.  Even so, the evidence reviewed by law enforcement does not appear to support Allen's explanation.

Contrary to common argument in this District, the weight of the evidence should not be viewed as the "least important" of detention factors.  Instead, a district court has broad discretion to determine the relative weight of each of the four Bail Reform Act factors, including the weight of the evidence against a defendant, when analyzing whether the defendant poses a danger or is a risk of flight.  No factor is categorically of greater or lesser weight than the others.  As the Second Circuit Court of Appeals has observed:

> Although § 3142(g) of the Bail Reform Act lists various factors to consider, it says nothing about the relative weight a court should give them when deciding whether

12

to release or detain a defendant. *See generally* 18 U.S.C. § 3142(g). That silence is unsurprising, because the weight given to each factor will inevitably vary from case to case, and might even vary depending on whether the inquiry relates to a defendant's danger or to his risk of flight. What is more, certain factors might interact with one another in a particular case in a way that alters a court's analysis of a defendant's danger to the community or flight risk.

*United States v. Zhang*, 55 F.4th 141, 149-50 (2d Cir. 2022). In *Zhang*, the Second Circuit found

that the district court gave appropriate weight to the second factor – the weight of the evidence –

in determining that there was "significant evidence" that Zhang had in fact committed the charged

murder. *Id.* at 150-51. Affirming the district court's relative reliance on the weight of the evidence

in determining dangerousness, the court explained:

> In making a predictive assessment of the defendant's future dangerousness if released into the community, common sense and § 3142(g)(2) aligned with the district court's consideration of the strength of this evidence, especially coupled with the nature of the charged offense. It stands to reason that the more strongly the evidence indicated that the defendant committed the murder, the more likely he poses a danger to the community if released on bail.

*Id.* Similarly, in considering whether the defendant poses a risk of flight, the court explained that

where "the evidence against a defendant is strong, it follows that the defendant faces an elevated

risk of conviction (and of the attendant punishment), and therefore may present an elevated risk

of flight. *Id.* at 151-52.

The *Zhang* court's analysis holds true here, where the evidence against Allen is very strong,

suggesting both a heightened danger to the community as well as an elevated risk of flight. The

strength of the evidence supports detention, as it indicates the significant risk of actual danger

posed to children by the defendant, as well as an elevated risk of flight to avoid accountability on

serious charges.

###### C.    History and Characteristics of the Defendant

Defendant Allen is a young man with no known prior arrests or convictions.  Nonetheless, even as a young man Allen engaged in an eight-month course of conduct, repeatedly sending and receiving images of helpless children suffering through sexual abuse.  This was not a one-time youthful indiscretion, nor was this merely an immature but misguided attempt at making money. The 17 Telegram chat strings demonstrate that Allen eagerly participated in the exchange of child pornography with numerous users, and actively encouraged the sexual exploitation of the UC's purported daughter.  Allen's history and characteristics counsel caution when analyzing the danger he presents to the community.  Despite his youth, he has demonstrated that his prolific use of online platforms makes him a danger to children both online and in the physical world, which ultimately weighs in favor of detention.

###### D. The Nature and Seriousness of the Danger to Any Person or the Community

Finally, the sexual exploitation and abuse of children presents a serious danger to the community, which results in severe mental, emotional, and physical trauma to the countless children who are victimized by offenders like the defendant and others with a demonstrated sexual interest in children.    It is this type of harm that led Congress to create the statutory presumption of detention in these cases.

That child pornography offenses are serious is a fact noted by the Supreme Court. At least as early as the landmark decision, *New York v. Ferber*, 458 U.S. 747 (1982)*,* the Supreme Court referenced numerous research materials detailing the harm to children as a result of the production and trafficking of child pornography.

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took

place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography."

Given the risks that the defendant poses to children both online and in the physical world, there are no conditions or combination of conditions that will reasonably keep children in the community safe and assure his appearance if he is released.  As such, this factor weighs heavily in favor of detention.

## **CONCLUSION**

For all of the reasons set forth above, a consideration of the evidence in this case and the applicable statutory factors compels the conclusion that the defendant should be detained pending trial.

Respectfully submitted,

EDWARD MARTIN
United States Attorney
D.C. Bar. No. 415082


_____*/s/ Jocelyn Bond*_____
Jocelyn Bond
D.C. Bar No. 1008904
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Telephone: (202) 809-0793
Email: Jocelyn.Bond@usdoj.gov